IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANGELA SOREMKUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV830 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Angela Soremkun ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on August 2, 2013 and August 1, 2013, respectively, alleging a disability onset date of July 1, 2012 in both applications. (Tr. at 12, 253-61.)[1] She later amended her alleged onset date to August 5, 2013. (Tr. at 12, 266.) Plaintiff's applications

---
[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

were denied initially (Tr. at 88-125, 171-81) and upon reconsideration (Tr. at 126-63, 184-201). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 202.) On April 22, 2016, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 27), and, on July 13, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 14.)[4] At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> migraines; seizure disorder; bipolar disorder; and opiate and substance addiction.

(Tr. at 15.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 16-18.) Therefore, the ALJ assessed

---

[4] In making her finding at step one, the ALJ utilized Plaintiff's original alleged onset date of July 1, 2012, rather than her amended onset date of August 5, 2013. (See Tr. at 12, 14.) However, Plaintiff does not argue that any issues arise in this regard, and the Court finds none.

5

Plaintiff's RFC and determined that she could perform light work with further limitations. (Tr. at 15.) Specifically, the ALJ found that Plaintiff

> can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; occasionally balance; tolerate no exposure to hazards; understand, remember, and carry out very short and simple instructions; and never perform tasks at a production pace or have quota requirements.

(Tr. at 19.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 25.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 25-27.)

Plaintiff now argues that the above RFC failed to properly account for her mental limitations as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). However, after a careful review of the record, the Court finds that substantial evidence supports the mental RFC assessed in this case.

At step three of the sequential analysis, the ALJ determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit noted that where such limitations are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter

6

limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the present case, as noted above, the ALJ found Plaintiff moderately limited in terms of concentration, persistence, or pace at step three of the sequential analysis. In doing so, the ALJ noted that:

> [Plaintiff] testified that she has difficulty concentrating when she is depressed or manic. She stated she plays card games with her mother. She documented that she can pay bills, count change, and handle a savings account. However, [Plaintiff] stated she does not follow written instructions, and cannot follow spoken instructions well. She documented that she can pay attention for fifteen to twenty minutes, and does not finish what she starts.

(Tr. at 17.) In assessing Plaintiff's RFC, the ALJ then found that Plaintiff's impairments limited her in that she could only "understand, remember, and carry out very short and simple instructions" and could "never perform tasks at a production pace or have quota requirements." (Tr. at 19.)

Plaintiff now argues that these RFC restrictions fail to adequately address her moderate limitations in concentration, persistence, or pace. In particular, she contends that "a limitation to non-production pace or no quota requirements only addresses pace, not concentration or persistence." (Pl.'s Br. [Doc. #12] at 15.) In response, Defendant notes that other decisions in this District have specifically addressed the issue of whether such restrictions adequately

7

account for moderate limitations in concentration, persistence, or pace. See Farrington v. Berryhill, No. 1:15CV846, 2017 WL 807180, at *4-5; Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6-9 (M.D.N.C. July 26, 2016); Bryan-Tharpe v. Colvin, No. 1:15CV00272, 2016 WL 4079532 at *7 (M.D.N.C. July 29, 2016). In Grant, the court undertook an in-depth analysis of the case law from other circuits underpinning the Fourth Circuit's decision in Mascio. After "review[ing] how those appellate courts (and district courts within those circuits) have ruled in cases involving a moderate limitation in CPP and a restriction to non-production work in the mental RFC," the court concluded that "the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that [a] non-production restriction . . . sufficiently accounts for [a claimant's] moderate limitation in CPP." Grant, at *7, *9.

Moreover, the ALJ in the present case not only included significant RFC restrictions relating to Plaintiff's limitations in concentration, persistence, and pace, but also specifically explained her reasons for doing so in her decision. As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> "does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court."

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a

8

job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

Here, as in Tolbert, the ALJ sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace were accounted for by the RFC. In particular, the ALJ discussed the consistency of these findings with the opinions of the State agency psychological consultants, Dr. Ben Williams and Dr. David Mullen. (Tr. at 23.) Both Dr. Williams and Dr. Mullen determined that Plaintiff was moderately limited in concentration, persistence, and pace (see Tr. at 96 and 151) but nevertheless could perform simple, routine, repetitive tasks (Tr. at 103, 154). Both consultants further explained that Plaintiff remained capable of understanding, remembering, and carrying out very short and simple instructions despite her limitations in understanding, memory, concentration, and persistence. (Tr. at 101-02, 139, 157.) Although the ALJ assigned only partial weight to the overall findings of the State agency psychological consultants, she specifically accepted their findings regarding concentration, persistence, and pace, noting that the evidence of records supported their determinations. (Tr. at 23.)[5] The ALJ specifically included in the RFC a finding that Plaintiff could only

---

[5] To the extent Plaintiff contends that the ALJ failed to specifically state that Plaintiff could perform within the RFC for a full 8-hour workday, the Court notes that this finding is clearly part of the RFC determination, in light of the ALJ's overall discussion and in light of the ALJ's reliance on the opinions of the state agency physicians specifically considering that question. Similarly, to the extent Plaintiff contends that state agency physician Dr. Mullen found moderate limitations in Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (Pl.'s Reply Br. [Doc. #16] at 4), Dr. Mullen specifically explained that with respect to that limitation, Plaintiff was still "able to carry out very short and

9

"understand, remember and carry out very short and simple instructions." In addition, the ALJ added two additional concentration, persistence, and pace-related limitations to the RFC, namely the restrictions that Plaintiff could "never perform tasks at a production pace" and could never "have quota requirements," as discussed above. (Tr. at 19.)

Plaintiff nevertheless contends that the RFC is insufficient in light of Plaintiff's claim that she can only pay attention for 15 to 20 minutes and does not finish what she starts. In this regard, at step three, the ALJ noted Plaintiff's various contentions, including her claim "that she can only pay attention for fifteen to twenty minutes, and does not finish what she starts." (Tr. at 17.) As to this contention, the ALJ cited Plaintiff's Disability Report, in which Plaintiff answered as follows:

> For how long can you pay attention?    15 to 20 minutes
> Do you finish what you start? (For example, a conversation,
> chores, reading, watching a movie?)           ___ Yes        _X_ No

(Tr. at 311.) However, the ALJ did not accept Plaintiff's assertions in full. Instead, the ALJ made the following determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Despite the allegations, the claimant appeared as articulate and logical in her description of how things affected her. Although she demonstrates some lack of understanding of some of her conditions (seizures and blood counts), and the record demonstrates that she is confused by ever changing medication regimen that sometimes triggers an overdose, she takes her medicine when it is available and has been able to document a log of her episodes of seizures and manic depressive episodes.

---

simple instructions" (Tr. at 139), and he concluded that "[b]ased on totality of evidence in file including data from PRT explanation, [Plaintiff] has severe mental impairments that impose functional limitations on day-to-day activities but none great enough to preclude all work. [Plaintiff] is able to perform SRRTs." (Tr. at 140.)

> When on her medication, [Plaintiff] reported her medication was working. Further, Dr. Mast stated she was "doing amazingly well" after her [] hospital admission. [Plaintiff] stabilized on medication. On July 24, 2016, [Plaintiff] was independent in all areas of activities of daily living, and used public transportation.

(Tr. at 22.) Plaintiff does not challenge the ALJ's credibility determination or symptom evaluation in this appeal.[6]

Ultimately, the ALJ not only adequately accounted for Plaintiff's concentration, persistence, and pace limitations in the RFC itself, but also provided additional explanations and bases for doing so in the decision. This is sufficient to create the requisite "logical bridge," and in these circumstances, there is no basis for a remand pursuant to Mascio. In short, unlike in Mascio, the instant ALJ's discussion of, and reliance on, substantial record evidence adequately explains the extent to which Plaintiff's moderate limitation at step three translated into additional RFC restrictions, and the RFC included specific limitations to only "very short and simple instructions" and never performing tasks at a production pace or having a quota requirement. Accordingly, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc.

---

[6] The state agency physicians likewise considered Plaintiff's claims set out in her Disability Report, and still reached the conclusions adopted by the ALJ, as set out above. In a footnote in her Brief, Plaintiff contends that the ALJ failed to specifically adopt the social limitations included by the state agency physicians. (Pl. Br. at 13 n.5.) It is not clear if Plaintiff intends to raise this as a separate claim, but in any event, the ALJ clearly relied on the opinion of consultative psychologist Anthony Smith, Ph.D., and Plaintiff's own testimony in concluding that no social limitations were needed in the RFC. (Tr. at 22, 23 (noting Dr. Smith's opinion that Plaintiff "could likely interact with peers and co-workers and respond appropriately to supervision"; Tr. at 17 (noting only mild difficulties in social functioning and that Plaintiff has a fiancé, goes to church every Sunday, is an usher, and shops in stores).)

11

#11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge